IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 1:03cr530 |
| JAMES A. TROVATO, | ) | |
| Movant. | ) | |

Memorandum Opinion

Before the Court is James Trovato's Motion To Vacate And Set Aside Sentence ("Motion To Vacate"), brought under 28 U.S.C. § 2255, in which he claims that his counsel's inaccurate prediction as to whether he was likely to receive a sentence of incarceration constituted ineffective assistance and rendered his guilty plea constitutionally inadequate. For the reasons stated below, the Motion to Vacate must be DISMISSED.

**Background**

Trovato's claim of ineffective assistance of counsel challenges the constitutionality of his guilty plea to a charge of conspiracy to distribute controlled substances. On August 5, 2004, a grand jury returned a 78-count superceding indictment

against Trovato and eight other defendants, including several doctors and pharmacists, all of whom were charged in Count I with conspiracy to unlawfully distribute Schedule III and IV controlled substances on the Internet in violation of 21 U.S.C. §§ 841, 843 and 846. In addition, Trovato was charged with nine substantive counts of distribution of controlled substances in violation of § 841(a)(1). The superceding indictment also included a forfeiture allegation. Trovato, who was represented by Criminal Justice Act counsel, Lana M. Manitta, waived appearance at his arraignment on the superceding indictment, at which the Court scheduled a jury trial for September 7, 2004. On the morning of trial, Trovato appeared with counsel and pled guilty to Count I of the superceding indictment under a written plea agreement with the government. After accepting Trovato's guilty plea, the Court dismissed the remaining counts of the superceding indictment upon the government's motion.

In his Position On Sentencing, defendant argued for a downward departure from the then-mandatory sentencing guidelines on the following grounds: (1) the criminal history used in the Presentence Report ("PSR") overstated the seriousness of his prior offenses; (2) he had "extraordinary family ties"; (3) the victims were partially responsible for the offense conduct; (4) he had demonstrated post-offense rehabilitation; and (5) the combination of these factors especially warranted a downward

departure to a sentence of probation, or at most a period of home detention. The government opposed all of the above grounds for departure, except for extraordinary family ties, on which it took no position. At sentencing on December 3, 2004, the Court denied Trovato's request for a downward departure and sentenced him to 30 months incarceration, followed by three years of supervised release. The Court also entered a Consent Order Of Forfeiture for $1,528,327. Defendant did not appeal either his conviction or his sentence.

On January 31, 2005, Trovato filed this Motion To Vacate, in which he contends that counsel "misinformed him with respect to the effect of downward departures on his potential sentence" and that he would not have pled guilty had he not been assured by counsel that he was unlikely to receive a sentence of incarceration. Def.'s Mot. at 3. Trovato supports this claim with his affidavit, signed on January 29, 2005, and the affidavit of a friend, Gail A. Ferber, signed on January 28, 2005. On February 4, 2005, the Court ordered the government to respond to the Motion To Vacate. On April 5, 2005, the government filed its Response, in which it argues that counsel's performance did not fall below the objective standard of reasonableness and that Trovato knowingly and voluntarily pled guilty following an extensive plea colloquy. Attached to that pleading was an affidavit of defendant's counsel, Manitta, in which she describes

her conversations with defendant in preparing him for his plea. Trovato filed a Reply on May 9, 2005, after receiving an extension of time. In that Reply, Trovato noted that he had prepared an accompanying affidavit that he would mail from prison. On May 12, 2005, he filed a handwritten statement, which he had signed on May 5, 2005, along with a Motion For Leave To File Affidavit.[1] Trovato's arguments rely solely on the case record and the affidavits accompanying his briefs, and he has not requested an evidentiary hearing.

**Discussion**

I. Purpose of 28 U.S.C. § 2255

A prisoner in custody on a federal conviction may challenge his detention by filing a motion under 28 U.S.C. § 2255 alleging that "[his] sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, § 2255 is not a substitute for a direct appeal of any error of law, and "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 n.10 (1979).

---

[1] Given his incarceration, Trovato's Motion For Leave To File Affidavit will be granted, and the Court will consider the second affidavit in its ruling.

Rather, a collateral attack under § 2255 is proper only if the claimed error presents "exceptional circumstances" in the form of a jurisdictional or constitutional violation, a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994)(quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

II. Ineffective Assistance of Counsel

A. The Strickland Test

Strickland v. Washington sets a high bar for proving ineffective assistance of counsel. See 446 U.S. 668, 689 (1984). To prevail on an ineffective assistance claim, a defendant must show (1) that his counsel's representation did not meet an objective standard of reasonableness, considering all of the circumstances of the particular case as viewed at the time of counsel's conduct, and (2) that the defendant suffered prejudice as a result of counsel's defective performance. See id. at 687-88, 690. Both showings are necessary to substantiate an ineffective assistance claim. Therefore, unless a defendant can demonstrate that his attorney's shortcomings adversely affected the outcome of his trial, it is unnecessary for a court to determine whether the representation was in fact deficient under the first prong of the Strickland standard. See id. at 688; United States v. Terry, 366 F.3d 312, 314 (4th Cir. 2004).

Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S. at 690, and a court "must filter the distorting effects of hindsight from [its] analysis." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

B. Application Of Strickland To A Guilty Plea

To substantiate a claim that ineffective assistance of counsel rendered his guilty plea constitutionally inadequate, a defendant must demonstrate that but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Beck v. Angelone, 261 F.3d 377, 394 (4th Cir. 2001). Moreover, "a petitioner's solemn declarations in open court [affirming a plea] agreement . . . 'carry a strong presumption of verity,'" and "in the absence of extraordinary circumstances [warranting an evidentiary hearing] . . . a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005)(discussing a plea agreement waiver of the defendant's right to challenge his conviction and sentence collaterally). As such, a defendant is bound by those statements absent clear and convincing evidence that they were based on "gross misinform[ation]" provided by counsel, and "[a]n

attorney's 'bad guess' as to sentencing does not justify withdrawal of [or invalidate] a guilty plea." See Little, 731 F.2d at 240 n.2, 241-42. Furthermore, even if counsel has provided the defendant with erroneous information or advice, "if the information given by the court at the Rule 11 hearing corrects or clarifies [the error] and the petitioner admits to understanding the court's advice," the defendant cannot later challenge his conviction based on the erroneous information. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)(holding in the context of Fed. R. Crim. P. 32(d) that a large discrepancy between the defendant's sentence and counsel's estimate was not a "fair and just reason" for the defendant to withdraw his guilty plea because he understood at his plea colloquy that counsel's predictions were not binding). As the Supreme Court and the Fourth Circuit have explained, these exacting standards are necessary to protect the "fundamental interest in the finality of guilty pleas." See, e.g., Hill v. Lockhart, 474 U.S. 52, 58 (1985); Little v. Allsbrook, 731 F.2d 238, 242 (4th Cir. 1984).

III. Trovato's Claims

A. Counsel's Predictions Regarding Potential Sentence

Under the above standards, the Court finds that Trovato's claim of ineffective assistance with regard to any prediction by counsel that he would not receive a sentence of incarceration is

without merit, as he has failed to establish that he was prejudiced in any way by counsel's alleged representations.[2] Trovato's argument rests primarily on his own affidavits, in which he claims that he told Manitta on countless occasions that he would not plead guilty if there was any chance that he would receive a sentence of incarceration.[3] Def.'s Jan. 29, 2005, Aff. ¶¶ 3, 7; Def.'s May 5, 2005, Aff. ¶ 1. Trovato also asserts in his affidavits that Manitta virtually assured him that he would receive a sentence of probation based on a strong likelihood that the Court would grant the downward departures he requested. Def.'s Jan. 29, 2005, Aff. ¶¶ 5, 7, 10; Def.'s May 5, 2005, Aff. ¶¶ 3-5 . Trovato acknowledges, however, that Manitta never told him that a sentence of probation, or even home detention, was a

---

[2] The majority of Trovato's Motion argues that counsel was ineffective because she failed to research Fourth Circuit case law and commentary to the federal sentencing guidelines regarding downward departures and therefore advised him incorrectly as to the likelihood that the Court would depart from the guidelines range. However, as noted above, because the Court finds that Trovato cannot establish that he suffered prejudice from counsel's alleged errors, the Court need not address whether counsel's performance in this regard fell below the objective standard of reasonableness. See Strickland, 466 U.S. at 697; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Notably, both Trovato's Motion and his Reply devote almost no attention to the prejudice prong of the Strickland test.

[3] Gail Ferber's affidavit also supports this assertion. Ferber states that she attended one of the meetings between Trovato and Manitta in August 2004 and overheard Trovato's end of phone calls with counsel both before and after that meeting. Ferber's Aff. ¶¶ 2-4.

certainty. See Def.'s Reply at 4, n.4. Consistent with this acknowledgment is his description of his final decision to plead guilty:

> I called Ms. Manitta back and told her that I would plead guilty if I would not get any prison time. Ms. Manitta repeated that, while she could not guarantee anything, it was her opinion that I would not be given any prison time.

Def.'s Jan. 29, 2005, Aff. ¶ 7. Furthermore, even had Trovato stated in his affidavit that Manitta had made such a promise, the Fourth Circuit has held that a defendant's self-serving affidavit does not constitute clear and convincing evidence sufficient to overcome the presumption that his statements at his plea colloquy were truthful and accurate. See Beck, 261 F.3d at 396; see also Burket, 208 F.3d at 191 (defendant's assertions of ineffective assistance were not of "sufficient evidentiary force . . . to demonstrate that his representations [at his plea colloquy] were untruthful or involuntary"). In his Reply, Trovato argues that his assertions in his Motion and affidavits regarding Manitta's performance do not contradict his sworn statements at the plea colloquy because he made those statements based on counsel's erroneous advice. See Def.'s Reply at 3-4. However, Trovato advances this argument in the context of the performance prong of Strickland and misses or ignores that his statements of understanding at the plea colloquy removed any prejudice that might otherwise have been caused by Manitta's alleged errors.

The transcript of Trovato's plea colloquy fully supports the government's contention that Trovato entered the plea knowingly and voluntarily and that any alleged misinformation provided by counsel regarding sentencing was corrected by the Court and understood by Trovato. As the Fourth Circuit stated in Beck, "[t]he standard for determining whether [a] guilty plea is valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 261 F.3d at 394 (finding the defendant's guilty plea voluntary based on his participation in discussions with counsel and in an extensive plea colloquy). The Fourth Circuit further held that "[a] plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the nature of the charges against him." See id. In this instance, as in Beck, Trovato, who completed one year of college, engaged in an extensive discussion with the Court regarding his plea agreement and affirmed the following: (1) that he understood the charges against him and that the Court was authorized to impose any sentence authorized by the sentencing guidelines, up to the maximum of five years incarceration; (2) that any estimate regarding sentencing provided by counsel or the government was not binding on the Court; (3) that he had not entered into the agreement based on any threats, promises or outside agreements

and that no one had promised him a lighter sentence as a result of his plea; (4) that the Court would make factual findings about his criminal history and role in the offense that would affect his sentencing range; (5) that the Court would not be bound in sentencing by any stipulations made in the plea agreement; and (6) that there were "some very limited circumstances" in which the Court could depart downward from the guideline range. Transcript of September 7, 2004, Plea Hearing at 6, 8-11, 21. Of special relevance to the Motion before the Court was defendant's affirmative answer when the Court asked whether "Ms. Manitta has discussed with you extensively the guidelines that she thinks might apply to your case and what sentence she thinks you might get." Trovato then confirmed his understanding of the Court's admonition that

> no matter what Ms. Manitta may have told you . . . about what sentence . . . you might get, none of those discussions in any respect bind or limit . . . this Court when it goes to sentence you.
>
> . . .
>
> [I]f at the time of sentencing the Court uses guidelines that are different from what you might be expecting or imposes a sentence that is different from what you might be expecting or hoping for, that will not give you a basis to withdraw your guilty plea.

Id. at 10, 11. Trovato also stated that he had had sufficient time to review the plea agreement and discuss it with counsel and that he was "fully" satisfied with the representation provided by counsel. Id. at 10, 11 17-18. Finally, Trovato acknowledged

that he would be bound by his plea and would not be able to "come back to court a month or two down the road" to change his mind. Id. at 5. These statements directly contradict the assertions in Trovato's Motion To Vacate and affidavits that his plea was constitutionally inadequate because it was based on his counsel's erroneous prediction of the sentence he was likely to receive. See Lemaster, 403 F.3d at 222.

The language of the written plea agreement also contradicts Trovato's argument that he pled guilty only because he was led to believe that he would not receive a sentence of incarceration. At the outset, the agreement Trovato signed explains his sentencing exposure:

> The maximum penalties for this offense are a maximum term of five years of imprisonment, a fine of $250,000, full restitution, a special assessment, and three years of supervised release.

Plea Agreement ¶ 1. The Agreement also states unequivocally that any prediction by counsel, or any other entity, with regard to the sentence Trovato might receive would in no way bind the Court at sentencing:

> The defendant explicitly acknowledges that his plea to the charged offense(s) authorizes the Court to impose any sentence that is authorized by the Sentencing Guidelines up to and including the maximum sentence set forth in the United States Code.
>
> . . .

> The defendant understands that the Court has not yet determined a sentence and that any estimate of the probable sentencing range under the sentencing guidelines the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court.

Id. ¶¶ 4, 6; Def.'s Mot. at 3-4 n.1. Also pertinent to Trovato's Motion, he acknowledged by signing the Agreement that he was "satisfied that [his] attorney ha[d] rendered effective assistance." Plea Agreement ¶ 3.

Counsel's affidavit, submitted with the government's Response, further supports the presumption of accuracy afforded Trovato's statements at the plea colloquy. Trovato does not dispute that he and Manitta engaged in numerous extensive discussions about the sentencing guidelines, the sentences received by his co-defendants and his own sentencing exposure. Def.'s Jan. 29, 2005, Aff. ¶¶ 3, 5, 7, 8; Def.'s May 5, 2005, Aff. ¶ 1; Manitta's Aff. at 2-3. However, Manitta contests Trovato's characterization of her confidence that the Court would grant a downward departure, stating instead that she fully explained the difficulty in obtaining departures from the then-mandatory guidelines and the breadth of the Court's discretion regarding sentencing:

> No different than *every defendant* I have represented, Mr. Trovato wanted a plea agreement that would guarantee no jail time.

> No different than with *every defendant* I have represented, I explained that the Federal Sentencing Guidelines would be applied and that the final decision rests solely with the Court.
>
> . . .
>
> As for the suggestion that I promised our requests for downward departures would be granted, this is simply untrue. I explained to Mr. Trovato that courts can grant downward departures for various reasons, including those argued in this matter . . . but at *no* time did I assure him that they would be granted, nor--especially--that any of the requests would be a "slam dunk."[4]
>
> . . .
>
> I also told Mr. Trovato that [departures] are difficult to obtain and narrowly drawn.[5]

Manitta's Aff. at 2-3 (emphasis in original). Manitta does not deny that Trovato told her as late as August 2004 that he would not plead guilty if he faced potential incarceration. Id. at 1. Yet the circumstances of the case continued to evolve in August and early September, as numerous co-defendants, including the ringleader of the conspiracy, pled guilty on the eve of trial.

---

[4] Counsel is responding to Trovato's first affidavit, in which he used the term "slam dunk" to describe Manitta's alleged representation to him regarding the likelihood that he would receive a downward departure. Def.'s Jan. 29, 2005, Aff. ¶ 10. In his second affidavit, Trovato explains that he did not intend to suggest that Manitta herself had used that term. Def.'s May 5, 2005, Aff. ¶ 3.

[5] In his May 5, 2005, affidavit, Trovato denies that Manitta gave him such a warning. Def.'s May 5, 2005, Aff. ¶ 4.

This dramatically changed the nature of the options Trovato faced. Accordingly, the Court finds that Manitta's sworn representations regarding her explanation of the sentencing process to Trovato, together with the evolving circumstances of the case, support the conclusion that Trovato voluntarily chose to plead guilty based on the choices available to him at the time.[6] Furthermore, even were the Court to accept Trovato's version of counsel's representations, any errors therein clearly were corrected by the Court during its Rule 11 colloquy with defendant.

Finally, although Trovato is correct that "the barrier of the plea or sentencing proceeding record, although imposing, is not insurmountable," see Blackledge v. Allison, 431 U.S. 63, 74-75 (1977), the case he cites to demonstrate that his claim falls under this narrow exception is inapposite because he expressly denies in his pleadings, as he did in his Plea Agreement and to the Court, that Manitta ever "promised" or "guaranteed" that he

---

[6] Trovato's Position On Sentencing noted among the factors relevant to "the decision that this Petitioner faced in the weeks, months, and days prior to trial" (1) the "dropping out" of co-defendants through guilty pleas, (2) the harshness of the sentencing guidelines and (3) the likelihood that a jury would convict him based on a "willful ignorance" argument. Def.'s Position On Sentencing at 2. With regard to the willful ignorance argument, Trovato's Position explained: "As the Court correctly stated, and as Defendant has discussed with counsel, a jury's consideration of that concept could well have led to his conviction and a substantially longer sentence than he now faces." Id.

would receive a sentence of probation or house arrest. See Def.'s Reply at 4, n.4. Trovato cites Strader v. Garrison, which involved a defendant's reliance in pleading guilty on his counsel's erroneous statements of the law regarding the defendant's eligibility for parole, which the court deemed "gross misrepresentations." See 611 F.2d 61 (4th Cir. 1979). However, the Fourth Circuit explained in Little that to extend this concept to cases in which counsel has merely made a prediction that was not realized, rather than a legal error, "would open the door to habeas relief for all prisoners whose lawyers underestimated the length of their sentences." 731 F.2d at 242. Thus, the Fourth Circuit refused to extend the holdings of Strader and a similar case, O'Tuel v. Osborne, 706 F.2d 498 (4th Cir. 1983), to instances such as this one, in which Trovato "could not have been 'grossly misinformed'" because he "was never given specific assurance as to what his sentence would be." See Little, 731 F.2d 238. Trovato's own assertion that "this too is not a case where a *prediction* was not realized" cannot convert Manitta's estimate of the likelihood that he would not receive a sentence of incarceration into an erroneous statement of the law--and thus a "gross misrepresentation" that warrants habeas relief. See Def.'s Reply at 3 (emphasis in original).

Accordingly, because Trovato's sworn statements during the plea colloquy clearly demonstrate that he understood both the

rights he was waiving and the discretion of the Court with regard to sentencing, he has failed to establish that but for any over-optimistic representations by counsel regarding his potential for avoiding incarceration, he would not have pled guilty and would have instead proceeded to trial.

B. Counsel's Argument Regarding Criminal History

Trovato's argument that he was prejudiced by counsel's handling of information about his criminal history during the sentencing proceeding also is unavailing. Although he complains that Manitta failed to inform the Court that he did not serve ten days in jail for a driving under the influence conviction, this omission did not impact Manitta's core argument, which was that Trovato should receive a downward departure because the criminal history assessment used by the probation officer overstated the seriousness of his prior alcohol-related offenses. As the government points out, and as Trovato acknowledges in his Position On Sentencing, the punishment he received for this conviction was not relevant to the effect of the conviction on his guideline calculation, nor was it relevant to the Court's consideration of whether his criminal history overstated the seriousness of his background. See Def.'s Position On Sentencing at 2; Def.'s Mot. at 5-6. Similarly, no prejudice resulted from the statement in defendant's Position On Sentencing that "[Trovato] does not dispute that [two DUI convictions] would

still result in the 1 criminal history point each," despite Trovato's assertion in the Motion To Vacate that one of those offenses was actually a "reckless operation" conviction for which he received no criminal history points. See Def.'s Position On Sentencing at 2; Def.'s Mot. at 5-6. As the record clearly shows, Trovato suffered no prejudice at sentencing from the way Manitta dealt with his criminal history because no points were indeed assigned for that conviction either in the PSR or by the Court. Def.'s Mot. at 5-6. As such, even assuming that counsel's performance in this regard fell below the objective standard of reasonableness, Trovato again has not demonstrated that he was prejudiced by any such errors and therefore cannot substantiate his claim of ineffective assistance under the Strickland test.

**Conclusion**

For the reasons stated above, the Motion to Vacate must be DISMISSED WITH PREJUDICE. An appropriate Order shall issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

Entered this 28th day of June, 2005.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia